UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

      Plaintiff,

v.

Laquan Dwayne Carter (1),

      Defendant.

Crim. No. 03-107 (JNE)
ORDER

This matter is before the Court on Laquan Dwayne Carter's Motion under 28 U.S.C. §

2255 to Vacate, Set Aside, or Correct Sentence. For the reasons discussed below, the Court

denies Carter's motion without an evidentiary hearing.

## I.      BACKGROUND

On September 17, 2002, Carter was charged in a Criminal Complaint with distribution of

more than five grams of "crack cocaine," in violation of 21 U.S.C. §§ 841(a)(1), 846. The

affidavit supporting the Criminal Complaint identified an April 16, 2002, transaction in which

Carter sold an informant 3.97 grams of crack cocaine, and an April 22, 2002, transaction in

which Carter aided another person in procuring 11.82 grams of crack cocaine and selling the

drugs to an informant. A two-count Indictment was lodged against Carter on April 1, 2003.

Count 1 charged that "[f]rom a date unknown, but from at least February 2002 through April

2002," Carter conspired to possess with intent to distribute and to distribute more than five grams

of cocaine base (crack), in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 846. Count 2

charged that on April 22, 2002, Carter aided and abetted the possession with intent to distribute

and distribution of more than five grams of a mixture or substance containing a detectable

amount of cocaine base (crack), in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 18

U.S.C. § 2. On April 14, 2003, Carter's federal public defender was replaced by appointed counsel.

A Superseding Indictment was filed on July 1, 2003, adding two defendants and charging Carter with conspiracy to distribute and possess with intent to distribute more than fifty grams of cocaine base (crack), in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846; conspiracy to possess firearms during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(o); and aiding and abetting distribution of more than five grams of a mixture or substance containing a detectable amount of cocaine base (crack), in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 18 U.S.C. § 2. The Superseding Indictment enlarged the timeframe of the conspiracy count, alleging that the conspiracy existed "from at least 1997 through the date of this Indictment." An additional defendant was added by a Second Superseding Indictment on August 20, 2003, and less than one month later a Third Superseding Indictment added a charge against Carter for threatening to commit a crime of violence against any individual, in violation of 18 U.S.C. § 1959(a)(4). The Third Superseding Indictment also enlarged the timeframe of the conspiracy count to "at least 1996 through the date of this Indictment." Additional superseding indictments were filed in October 2003 and January 2004. The operative indictment at the time of Carter's trial in December 2004 was a Sixth Superseding Indictment, which charged Carter in Count 1 with conspiracy to distribute and possess with intent to distribute more than fifty grams of cocaine base (crack) and more than five thousand grams of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846; Count 2 with conspiracy to possess firearms during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(o); Count 3 with aiding and abetting distribution of more than five grams of a mixture or substance containing a detectable amount of cocaine base (crack), in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 18

U.S.C. § 2; and Count 7 with threatening to commit a crime of violence against any individual, in violation of 18 U.S.C. § 1959(a)(4). The Sixth Superseding Indictment also asserted several counts against Michael Greenlaw, Carter's only remaining co-defendant.

Carter's counsel filed numerous pretrial motions that requested discovery from the government and sought suppression of certain evidence and statements. Carter's counsel also moved for a psychiatric examination and competency hearing on February 2, 2004, which the Court granted. On September 23, 2004, the Court determined that Carter was competent to stand trial. Carter and Greenlaw were tried together in a jury trial that commenced on December 7, 2004. The jury found Carter guilty on all counts asserted against him in the Sixth Superseding Indictment. On August 5, 2005, the Court sentenced Carter to 405 months' imprisonment on each of Counts 1 and 3; 240 months' imprisonment on Count 2; and 60 months' imprisonment on Count 7, all to be served concurrently. Carter appealed, contesting the Court's decision to overrule Carter's "Batson challenge of the government's peremptory strike of the sole minority member of the jury pool," and the sufficiency of the evidence to support Carter's conviction for conspiracy to distribute crack cocaine. *United States v. Carter*, 481 F.3d 601, 609-11 (8th Cir. 2007). The court of appeals affirmed Carter's conviction on March 23, 2007. *See id.* His petition for a writ of certiorari to the United States Supreme Court was denied.

In a pro se motion dated December 1, 2008, Carter seeks to vacate, set aside, or correct his sentence, arguing that his counsel provided ineffective assistance. The government responded to Carter's pro se motion on March 17, 2009. The Court then appointed counsel for Carter. Counsel filed a memorandum in support of Carter's motion on September 24, 2009. The

government responded on December 4, 2009. Additional affidavits were filed by Carter in

February 2010. The Court now addresses Carter's motion.[1]

## II. DISCUSSION

Section 2255 provides that a federal prisoner may collaterally attack his sentence on the

ground that the sentence was imposed in violation of the Constitution or federal laws. 28 U.S.C.

§ 2255(a) (2006). A prisoner is entitled to an evidentiary hearing under § 2255 "unless the

motion, files and records of the case conclusively show that the prisoner is not entitled to relief."

*Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995). "[A] petition can be dismissed

without a hearing if (1) the petitioner's allegations, accepted as true, would not entitle the

petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted

by the record, inherently incredible, or conclusions rather than statements of fact." *Id.*

A claim for ineffective assistance of counsel is properly raised in a § 2255 petition. *See*

*Massaro v. United States*, 538 U.S. 500, 504 (2003). To succeed on such a claim, a petitioner

"must show that his lawyer's performance fell below the minimum standards of professional

competence (deficient performance) and that there is a reasonable probability that the result of

the proceedings would have been different if his lawyer had performed competently (prejudice)."

*Alaniz v. United States*, 351 F.3d 365, 367-68 (8th Cir. 2003) (citing *Strickland v. Washington*,

466 U.S. 668, 690, 694 (1984)). A strong presumption exists "that counsel's conduct falls within

the wide range of professionally reasonable assistance and sound trial strategy." *Toledo v.*

*United States*, 581 F.3d 678, 680 (8th Cir. 2009) (quotation marks omitted). "A reasonable

probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466

U.S. at 694. "[T]here is generally no basis for finding a Sixth Amendment violation unless the

---

[1]    Carter also filed a Pro Se Motion for Preliminary Injunction Order Pursuant to Fed. R. Civ. P. 65. The motion is nonsensical, and it is summarily denied.

accused can show how specific errors of counsel undermined the reliability of the finding of guilt." *United States v. White*, 341 F.3d 673, 678 (8th Cir. 2003).

*Plea offer*

Carter argues that his trial counsel was ineffective by failing to convey the government's plea offers to Carter. It is well established that "the failure to convey a plea offer constitutes ineffective assistance." *Smith v. United States*, 348 F.3d 545, 552-53 (6th Cir. 2003); *see Cullen v. United States*, 194 F.3d 401, 404 (2d Cir. 1999) ("[T]here can be no doubt that counsel must always communicate to the defendant the terms of any plea bargain offered by the prosecution."); *Teague v. Scott*, 60 F.3d 1167, 1170 (5th Cir. 1995) ("Several other circuit courts have found that the failure of trial counsel to inform the defendant about a government plea offer amounts to ineffective assistance of counsel."). Here, there is evidence that the government made two plea offers, at least one of which contemplated a fifteen-year term of imprisonment. In his pro se memorandum, Carter claims that his counsel failed to disclose the government's offers. In a sworn affidavit dated January 26, 2010, however, Carter directly contradicts this allegation, stating that his trial counsel "attempted to threaten [Carter] to accept the" plea offers. This is consistent with the sworn declaration of Carter's trial counsel, which provides that:

> I received at least two proposed plea agreements from the government before trial which I discussed with Mr. Carter on several occasions. Mr. Carter declined the government's offer to plead guilty and repeatedly advised me that he wanted to go to trial, despite my admonition that the likely sentence after trail [sic] would be very severe. Indeed, on one occasion he specifically advised me that he was not happy with a proposed deal that might have resulted in a fifteen-year sentence, and he accused me of trying to "railroad" him into accepting the deal, and said he did not care if he got thirty years or more after a trial.

Additionally, at the November 29, 2004, pretrial motions hearing, Carter told the Court that the only time his counsel came to see him was to "intimidate [him] or persuade [him] to take a deal." Therefore, because Carter's allegations are directly contradicted by his own affidavit, his

5

attorney's affidavit, and his earlier representations to the Court, an evidentiary hearing is not required to determine whether Carter's counsel properly disclosed and discussed the government's plea offers with Carter. It is clear that he did.

Furthermore, even if Carter's counsel failed to convey the government's plea offers to Carter, there is no reasonable probability that he would have accepted the offers rather than proceed to trial. Carter's trial testimony reflected a steadfast refusal to cooperate with the government or to accept responsibility for his actions. Carter's comments at his sentencing hearing further suggest that at no point would he have accepted a plea offer from the government. Carter began his comments by stating: "I didn't commit a crime. I didn't break the law or statute. So why would I have to cooperate with [the government] to destroy other people's lives? This is not my case." Carter also mentioned that his counsel consistently told him that cooperating with the government was his best option, but that he refused to cooperate because he "didn't commit a crime" and "didn't do anything wrong." Carter concluded his remarks, stating "I ain't got my mercy because I didn't do anything wrong." Based on the Court's observations of Carter at trial and sentencing, it is apparent that Carter believed he had done nothing wrong and was unwilling to cooperate with the government. Therefore, even if Carter's counsel failed to convey the government's plea offers to him, he cannot show that he would have been prejudiced by any such failure. *See Chesney v. United States*, 367 F.3d 1055, 1060 (8th Cir. 2004) (finding district court properly relied on personal observations of defendant's "extensive trial testimony, in which he adamantly denied guilt" to support court's "belie[f] that [the defendant] would [not] have pleaded guilty under the government's pretrial offer, even assuming he won the inevitable swearing contest with his trial counsel about whether the plea offer was communicated"); *Sanders v. United States*, 341 F.3d 720, 723 (8th Cir. 2003)

("A defendant who maintains his innocence at all the stages of his criminal prosecution and shows no indication that he would be willing to admit his guilt undermines his later § 2255 claim that he would have pleaded guilty if only he had received better advice from his lawyer.").

*Advice on potential punishment*

Carter also contends that his trial counsel "repeatedly told and assured [Carter] that his maximum exposure at trial would be no more than 10 years inprisonment [sic]." This allegation, if not inherently incredible or contradicted by the record, would establish deficient performance. *See United States v. Herrera*, 412 F.3d 577, 581 (5th Cir. 2005) ("An attorney who underestimates his client's sentencing exposure by 27 months performs deficiently because he does not provide his client with the information needed to make an informed decision about accepting a plea offer or going to trial."). To support his allegation, however, Carter's affidavit indicates that every time he met with his counsel to discuss the case, his counsel told him and his family that if a jury convicted him he would not receive a sentence greater than ten years "because of the 'run-of-the-mill' drug distribution case involving a very small amount of drugs ('more than five grams' of crack)." It is thus apparent that the advice Carter is referring to related only to the original Indictment. Indeed, in the next paragraph of his affidavit, Carter states that the "Government then sought and received six superseding indictments, with increasingly severe potential sentencing consequences." Additionally, as noted earlier, Carter's counsel indicates that he told Carter "the likely sentence after trail [sic] would be very severe." In short, Carter's allegations are contradicted by his own affidavit and his counsel's affidavit, and an evidentiary hearing is not required to determine whether he received erroneous advice

with respect to the sentence he faced if found guilty by a jury.[2]  *Cf. Brown v. United States*, 178

F. App'x 590, 591 (8th Cir. 2006) (rejecting argument that defendant's counsel was ineffective

for allegedly telling defendant the maximum sentence after trial would be 132 months because

defendant's unsworn affidavits were contradicted by the record and the sworn affidavit of trial

counsel explained that the contested advice was given before the government's withdrawal of a

plea offer).  Instead, it is apparent that the advice Carter received regarding a ten-year maximum

sentence related to the original Indictment, which contained far less serious charges than the

subsequent superseding indictments.  Such advice was reasonable and does not constitute

deficient performance by Carter's counsel.[3]

*Jencks Act materials*

Carter argues that an evidentiary hearing is required to determine whether his counsel's

failure to ensure his access to Jencks Act materials was constitutionally deficient.[4]  *See* 18 U.S.C.

§ 3500 (2006).  The trial record shows that the government provided copies of the Jencks Act

materials to Carter's counsel three weeks before trial on the condition that copies of the materials

not be left with Carter at the institution where he was detained.  After the November 29, 2004,

pretrial motions hearing at which Carter's access to the Jencks Act materials was discussed, the

---

[2]    An affidavit from Karen Carter also indicates that Carter's counsel told her that Carter would not receive a sentence greater than ten years if he was found guilty by a jury.  The affidavit, however, contains no detail about when Carter's counsel allegedly made such a representation.  Therefore, the affidavit does not create the need for an evidentiary hearing.

[3]    For example, application of the U.S. Sentencing Guidelines to the drug quantities alleged in the Criminal Complaint would have yielded a base offense level of 26.  *See* U.S. Sentencing Guidelines Manual § 2D1.1(c)(7) (2004).  With a criminal history category of II, Carter's sentencing range would have been seventy to eighty-seven months.  Although Count 1 of the Indictment referred to a conspiracy spanning at least three months, it did not identify a specific drug quantity and it charged the same statutory drug quantity as the Criminal Complaint.

[4]    Carter complains generally of a "lack of access to discovery materials," but he specifically addresses only the Jencks Act materials.

Court gave Carter and his counsel access to the courtroom to review the government's evidence. On the second day of trial, after the testimony of ten government witnesses, the issue of access to the Jencks Act materials arose again. Carter's counsel indicated that Carter was able to review the Jencks Act materials during the direct examination of the government's witnesses, but that Carter had not had an opportunity to review the materials earlier because, under the government's conditions, counsel would have had to sit with Carter "in the jail cell while [he is] thumbing through [the materials]."[5] Counsel explained that this was "practically impossible" to do because the jail was an hour and a half away. To resolve the issue of Carter's access to the Jencks Act materials, the government agreed to disclose whom it would call on a day-by-day basis so that Carter could review the materials as soon as he arrived in the courtroom each day. After the third day of trial, and the testimony of an additional thirteen government witnesses, Carter informed the Court that he was still concerned about his ability to review the Jencks Act materials. Carter, however, indicated that he had been able to read the relevant materials while the witnesses were on the stand that day but that he was still concerned about not having enough time to review the Jencks Act materials related to Norman Darnell Toney, the government's first witness. The Court told Carter that Toney could be recalled before the end of trial if necessary. The Court also denied Carter's request to delay the trial for a couple of days to permit his review of the Jencks Act materials. The issue of access to the Jencks Act materials arose one more time on the fourth day of trial at which time the Court accommodated Carter's request to finish reviewing the Jencks Act materials related to Everett Jones.

The Court need not address whether counsel's failure to review the Jencks Act materials with Carter before the trial was deficient because Carter has not shown that he was prejudiced by

---

[5]     There is no indication that counsel reviewed the Jencks Act materials with Carter in the courtroom after the pretrial motions hearing.

his lack of access to those materials.  As an initial matter, a defendant is not entitled to materials

under the Jencks Act until *after* a witness testifies.  *See id.*  The record shows that Carter had

access to those materials in the courtroom throughout the trial, and Carter could not have been

prejudiced simply by not having access to materials before he had a right to them.  Carter has

also not identified how earlier access to the Jencks Act materials gives rise to a reasonable

probability that the jury's verdict would have been different.  As acknowledged by Carter at trial,

his primary concern was his inability to timely review the Jencks Act materials related to Toney.

Carter, however, has not identified information in the Jencks Act materials that would have

resulted in a more effective cross examination of Toney, nor has Carter argued that a more

effective cross examination of Toney would have altered the jury's verdict.  Instead, Carter relies

on the conclusory allegation that his counsel's conduct with respect to the Jencks Act materials

"constitutes ineffective assistance of counsel, deprived Mr. Carter of his right to participate in his

defense, was prejudicial, and requires a new trial."  Such an allegation does not create the need

for an evidentiary hearing.

*Exculpatory witness*

Carter next asserts that his counsel was ineffective by not calling a witness who would

have supported Carter's defense that "much of the violence described by the government's

witnesses" stemmed from a "love triangle" not a "drug turf war."  Carter has not supported this

allegation with an affidavit or any other evidence outside of the trial record.  At trial, counsel

represented that he "requested process be served [on the witness] some time ago," attempted to

locate the witness the day before and the day of her planned testimony, and attempted to contact

the United States Marshal's office in Florida to ascertain whether the witness had been served

with the subpoena.  The Court determines that these attempts to secure the witness's presence did

10

not fall below minimum standards of professional competence, and thus counsel's failure to call the witness does not constitute ineffective assistance of counsel. *Cf. Blair-Bey v. Nix*. 44 F.3d 711, 713 (8th Cir. 1995) ("We decline to impose a duty on criminal defense attorneys to hire private investigators to locate recalcitrant witnesses."). Furthermore, Carter's testimony about the "love triangle" and the tension it caused was corroborated by the testimony of Jones on cross examination. Thus, additional testimony on the subject would have been cumulative and not reasonably likely to have altered the outcome of the trial. *See Jefferson v. United States*, Crim. No. 97-276(4), 2002 U.S. Dist. LEXIS 25382, at *16 (D. Minn. Dec. 2, 2002) ("Failure to present cumulative evidence does not show that counsel was constitutionally ineffective." (citing *Hall v. Luebbers*, 296 F.3d 685, 693 (8th Cir. 2002)). Accordingly, an evidentiary hearing is not necessary with respect to this issue.

*Other pretrial and trial issues*

Carter makes a number of additional allegations related to his counsel's pretrial performance. Specifically, Carter argues that his counsel was ineffective by: (1) having only limited pretrial contact with Carter; (2) failing to relay Carter's request for new counsel to the Court; and (3) "repeatedly bull[ying] and threaten[ing]" Carter. These arguments fail. First, Carter's own affidavit indicates that his counsel discussed the case with him on a "dozen or so occasions." Second, Carter requested that his counsel be discharged at the November 29, 2004, pretrial motions hearing, and the Court denied his request. As a result, Carter can not show that he was prejudiced by the alleged failure of his counsel to communicate his request for new counsel to the Court. Third, Carter identifies no specific instances of conduct by counsel toward Carter that show counsel acted below minimum standards of professional competence.

Finally, Carter's pro se memorandum alleges that a variety of actions taken by Carter's counsel at trial establish ineffective assistance. These actions include failing to use peremptory challenges to ensure a diverse jury; failing to object when the government "vouchered [sic] for the credibility of there [sic] witnesses"; failing to impeach the government's "key witness"; refusing to acknowledge and incorporate Carter's desired trial strategy; failing to object to improper jury instructions "that eased the governments [sic] burden"; and failing to "object when the government failed to meet the specified requirements set forth for a conviction under [21 U.S.C. § 841(a)(1)]." These arguments fail to the extent that they challenge the reasonable trial strategy of Carter's counsel. *See Graham v. Dormire*, 212 F.3d 437, 440 (8th Cir. 2000) ("Reasonable trial strategy does not constitute ineffective assistance of counsel simply because it is not successful."). In addition, the allegations are either belied by the trial record or do not give rise to a reasonable probability that any deficiencies would have changed the outcome of the trial. Accordingly, the allegations do not support a claim for ineffective assistance of counsel.

*Sentencing*

Carter challenges his counsel's performance at sentencing, arguing that counsel did not properly object to enhancements in the Presentence Investigation Report; did not notify the Court that Carter was eligible for a reduced sentence under 18 U.S.C. § 3553(f) (2000) and § 5C1.2 of the U.S. Sentencing Guidelines; did not prepare adequately for the sentencing hearing; and "misstated the controlling statutes when speaking [on Carter's] behalf." These allegations are meritless. First, Carter's counsel made substantial objections to the Presentence Investigation Report, including challenges to drug quantities, firearm possession, role in the offense, and criminal history. Second, there is no support for Carter's conclusory allegation that he was eligible for a reduced sentence under 18 U.S.C. § 3553(f) and § 5C1.2 of the U.S. Sentencing

Guidelines.  Indeed, Carter was plainly ineligible for a reduced sentence.  *See* 18 U.S.C. §

3553(f) (permitting court to sentence below statutory mandatory minimum sentence if, among

other things, defendant has no more than one criminal history point, "defendant did not use

violence or credible threats of violence or possess a firearm . . . in connection with the offense,"

and defendant, prior to sentencing, truthfully provides the government with "all information and

evidence [he] has concerning the offense or offenses that were part of the same course of conduct

or of a common scheme or plan"); U.S. Sentencing Guidelines Manual § 5C1.2 (same).  Third,

the record directly contradicts Carter's allegation that his counsel was unprepared for the

sentencing hearing.  At that hearing, counsel supported his written submissions with additional

arguments and presented three witnesses to attest to Carter's history and characteristics.  This

performance was in no way deficient.  Fourth, Carter does not identify any misstatements of law

by his counsel, and the record does not support his assertion.  Accordingly, counsel's

performance at sentencing was not deficient, and Carter's allegations do not support a claim for

ineffective assistance of counsel.

*Appeal*

Finally, Carter challenges his counsel's performance on appeal.  "A criminal defendant is

constitutionally entitled to the effective assistance of counsel on direct appeal, as well as trial."

*Bear Stops v. United States*, 339 F.3d 777, 780 (8th Cir. 2003).  The relevant inquiry "is not

whether counsel's choice to omit [an argument] on appeal was an intelligent or effective

decision, but rather whether his decision was an unreasonable one which only an incompetent

attorney would adopt."  *Garrett v. United States*, 78 F.3d 1296, 1305 (8th Cir. 1996) (quotation

marks omitted).  "Counsel is not required to raise every potential issue on appeal," and absent

contrary evidence, a court assumes "that appellate counsel's failure to assert an issue was an

13

exercise of sound appellate strategy." *Anderson v. United States*, 393 F.3d 749, 754 (8th Cir. 2005) (quotation marks omitted). Here, Carter maintains that his counsel "refused to incorporate [his] comments, ideas and concerns into the drafting and construction of [his] direct appeal brief," and that his counsel did not respond to his "correspondence during the appeals process." However, other than Carter's conclusory allegations that his counsel "failed to identify glaring errors made in the final judgment" and "failed to address the illegal sentence imposed by the district court," Carter has not shown that his counsel's decision to narrow the issues on appeal was unreasonable, or that a different approach would have created a reasonable probability that the result on appeal would have been different. Therefore, Carter's allegations related to his counsel's performance on appeal do not support a claim for ineffective assistance of counsel.

*Certificate of appealability*

An appeal cannot be taken from a final order denying a motion under § 2255 without a certificate of appealability. 28 U.S.C. § 2253(c)(1) (2006); Fed. R. App. P. 22(b)(1). A court cannot grant a certificate of appealability unless the applicant has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requires a petitioner to "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, Carter has not shown that reasonable jurists would find the rejection of his ineffective-assistance-of-counsel claim debatable or wrong. Thus, the Court declines to grant a certificate of appealability.

### III.    CONCLUSION

In short, the Court determines that no evidentiary hearing is necessary to determine whether Carter's counsel was constitutionally ineffective because the motion, files and records of

the case conclusively show that Carter is not entitled to relief.  Accordingly, based on the files,

records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1.  Carter's Pro Se Motion to Vacate under 28 U.S.C. § 2255 [Docket No. 440] is DENIED.

2.  Carter's Pro Se Motion for Preliminary Injunction Order Pursuant to Fed. R. Civ. P. 65 [Docket No. 487] is DENIED.

3.  Carter is not entitled to a certificate of appealability.

Dated:  April 6, 2010

s/  Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge